[Civ. No. 28366. Second Dist., Div. Four. Mar. 14, 1966.]

SUNSET HOUSE DISTRIBUTING CORPORATION, Plaintiff and Appellant, v. COFFEE DAN'S, INC., Defendant and Respondent.

Freeman & Blum and Ivon B. Blum for Plaintiff and Appellant.

Gendel, Raskoff, Shapiro & Quittner, Frank C. Christl and G. Merle Bergman for Defendant and Respondent.

KINGSLEY, J.—Plaintiff sued to enjoin acts alleged to constitute unfair competition. A demurrer to its second amended complaint was sustained without leave to amend and a judgment of dismissal, based on the order sustaining the demurrer, was thereafter entered. Plaintiff has appealed from that judgment.

Plaintiff is a corporation engaged in the mail order distribution of general merchandise under the trade name "Sunset House" and, in connection with that business, it operates several retail stores. It advertises extensively by mail and in

national magazines and local newspapers. It has been in business, under that name, since 1951. Defendant is a corporation owning and operating a chain of restaurants and coffee shops, in Los Angeles County, under the name ''Coffee Dan's.'' In 1963, it opened an additional restaurant and coffee shop which it operates under the name of ''Coffee Dan's Sunset House.''

Contending that this use of the words ''Sunset House'' as part of the name of defendant's restaurant invades plaintiff's trade name and that it constitutes unfair competition, plaintiff sued to enjoin defendant from continuing to use the questioned words as part of the name of its restaurant. The trial court sustained a demurrer without leave to amend and this appeal followed. ▪▪▪ While we conclude that the allegations in the complaint now on file are not sufficient to state a cause of action, we think that plaintiff should have been given an opportunity to amend in an attempt to supply the deficiencies.

In addition to allegations as to the nature of the businesses conducted by the parties, as above summarized, the complaint alleges:

(1) That, at the location of each of its retail stores, plaintiff maintains a large sign bearing the name ''Sunset House'' and that, in some cases, such sign is ''associated with the colors red, orange and yellow, representative of the sun or a part thereof.'' It is also alleged that defendant ''prominently'' displays ''upon the facade'' of its restaurant, a sign with the name ''Coffee Dan's Sunset House'' and that said name is also ''extensively shown within the interior of said restaurant and upon said restaurant's menus and other furnishings, fixtures and equipment.'' Photographs of the two signs are attached to the complaint as exhibits.

(2) That, as a result of its activities since 1951, ''Plaintiff has gained a position of preeminence in the mail order field and in the retail field, and by reason thereof, the name SUNSET HOUSE in the retail business and among persons and concerns related thereto and dealing therewith, and among the members of the consumer public throughout the United States and in the County and City of Los Angeles, State of California, has acquired a valuable and secondary meaning with the effect that the name SUNSET HOUSE represents Plaintiff exclusively and represents the products sold by Plaintiff and the retail operations conducted by Plaintiff, and such products, operations and the business of Plaintiff are attributed to Plaintiff

by the consumer public by reason of the use of the name SUN-SET HOUSE in connection therewith."

(3) That "Plaintiff is informed and believes, and thereupon alleges, that Defendant adopted the name SUNSET HOUSE, and so prominently displayed said name upon, in and about its said restaurant, with the intent or effect of being able to trade upon the well established name and good will of Plaintiff, and with the further intent or effect of defrauding Plaintiff by the use of Plaintiff's business name, corporate name, and good will, with the effect or intent further of appropriating unfairly and unlawfully to Defendant's own use the name and good will of Plaintiff and its business. Defendant further adopted the name SUNSET HOUSE with the intent or effect of deceiving and defrauding and confusing Plaintiff's customers and the public generally into the belief that said business of Defendant is connected with the business of Plaintiff."

(4) That "Unless Defendant is restrained by this Court, it will continue to operate its said restaurant business under the name SUNSET HOUSE. The continuation of the use by Defendant of the name SUNSET HOUSE, or any name which includes the word SUNSET, together with the word HOUSE, or any combination or simulation thereof, has had and will continue to have the effect of constituting unfair competition by Defendant with Plaintiff. Such use has had and will continue to have the effect of constituting fraud and confusion by Defendant and upon Plaintiff's customers and upon the public by inducing them and each of them to believe that the business of Defendant is the business of Plaintiff. By reason of the acts of unfair competition as hereinabove alleged, committed by Defendant upon Plaintiff, present and prospective customers of Plaintiff will be deceived into trading with Defendant under the belief that the business conducted by Defendant is that of or associated with that of Plaintiff, and the quality of Defendant's goods and services will be attributable to Plaintiff under circumstances in which Plaintiff has no control. By reason of the acts of unfair competition committed by Defendant as hereinabove alleged, great and irreparable harm has been done and will continue to be done to Plaintiff's name, reputation, credit, good will, and in its relations with its customers, . . ."

(5) That "As a direct and proximate result of the adoption by Defendant of the name SUNSET HOUSE, as hereinabove alleged, certain members of the public have in fact become confused and deceived into believing that the Defendant is

affiliated with the Plaintiff or that the Plaintiff is affiliated with the Defendant. As a result of such confusion and deception, certain members of the public have communicated with Plaintiff with respect to matters solely attributable to the business of the Defendant and to the manner in which it is conducting and has conducted its business under the name SUNSET HOUSE. Said persons communicating with the Plaintiff expressed the belief that by or in communicating with the Plaintiff they were in fact communicating with the Defendant.''

I

A cause of action for tradename unfair competition is well pleaded if the complaint sufficiently alleges the existence of prior and continuous use of a tradename in such a way that a secondary meaning is acquired, subsequent use of a confusingly similar tradename by the defendant, and likelihood of confusion in the minds of the public of the defendant's business as that of, or as one affiliated with, the plaintiff. (*Stork Restaurant* v. *Sahati* (1948) 166 F.2d 348.)

II

In actions of the kind herein involved, it is not necessary that the parties be in market competition (*Academy of Motion Pictures Arts & Sciences* v. *Benson* (1940) 15 Cal.2d 685 [104 P.2d 650]; *MacSweeney Enterprises, Inc.* v. *Tarantino* (1965) 235 Cal.App.2d 549 [45 Cal.Rptr. 546]; *MacSweeney Enterprises, Inc.* v. *Tarantino* (1951) 106 Cal.App. 2d 504 [235 P.2d 266]), since a plaintiff may be harmed not only by diversion of customers but by the fact that the public may attribute to plaintiff the deficiencies of defendant's business and, on that account, cease dealing with plaintiff.

But, in any case, the basic fact on which relief is granted is the confusion in the minds of reasonable members of the general public from which an attribution of affiliation results.

Where the parties engage in the same business in the same locality, the possibility of confusion is so obvious that only these facts need be alleged. The same is true where, although not in direct competition, it appears from the complaint that the two businesses deal in articles or in services so similar that the public might reasonably conclude that plaintiff had merely enlarged the scope of its basic operations. But we think that, in other cases, a plaintiff should not be allowed to force another businessman into court, or to impose on the time and effort of a busy judicial system, unless it is able to

plead and to prove some special circumstances, peculiar to the two businesses involved, from which confusion would be likely to result.

One factor considered by the courts in this connection is whether the tradename is within the public domain or whether it is unique, arbitrary or fanciful. (*Philco Corp.* v. *F. & B. Mfg. Co.* (1948) 170 F.2d 958.) Equity gives a greater degree of protection to fanciful tradenames than it accords to names in common use. (*Stork Restaurant* v. *Sahati, supra* (1948) 166 F.2d 348; (1956) 29 So.Cal.L.Rev. 488.)

In the case of *Sunbeam Furniture Corp.* v. *Sunbeam Corp.* (1951) 191 F.2d 141, 144, the court stated that a ''differentiation is made between 'strong' and 'weak' marks based upon whether the word sought to be protected is general or fanciful.'' This difference in degree of protection is true even as to noncompeting businesses. (*Time, Inc.* v. *T.I.M.E. Inc.* (1954) 123 F.Supp. 446.) The *Sunbeam* case, *supra*, pointed out that the word ''sunbeam'' is a weak mark, and the case of *Perfection Co.* v. *Coe* (1945) 64 F.Supp. 942, 945, indicated that the word ''sun'' and representations of the sun were nondistinctive words or marks.

By analogy to the *Sunbeam* case and the *Perfection Co.* case, the word ''sunset'' is a ''weak'' tradename and therefore not entitled to the same degree of protection as a unique or fanciful tradename. The same obviously is true of the word ''house.'' It follows that, although the use of a ''strong''—i.e., a fanciful—name may, by itself, be sufficient to show a reasonable probability of public confusion, the use of a weak, generic name, part of the public domain, fails, unless accompanied by additional facts, to raise sufficient probability of confusion to justify judicial relief.

We turn, then, to inquire whether the complaint before us sets forth the requisite additional facts.

*A*

The signs, pleaded as exhibits, clearly add nothing, as the trial court ruled. The photographs of the signs, attached to the original complaint, are in black and white and give no hint of the tones or colors used. While the complaint alleges the colors used by plaintiff ''in some cases,'' it is discreetly silent as to the colors (if any) used in other cases or as to the colors used by defendant. It is obvious from the photographs that the signs differ widely in their style, arrangement of words, and in their over-all appearance. The pleading of the signs, as here

alleged, adds nothing to the admitted fact that both parties use the common words ''sunset'' and ''house.''

### B

Nor do we think that the allegations, above quoted and numbered ''(3)'', as to defendant's intent, are here helpful to the plaintiff. Whatever its intent or purpose, defendant is liable to plaintiff only if it has, in fact, created an unlawful confusion, or if its conduct was such that unlawful confusion is likely to result; it is not liable for mere bad motive which neither achieves nor is likely to achieve its objective.

### C

Equally unavailing are the allegations above quoted and numbered ''(2)'' and ''(4).'' These allegations are the mere conclusions of the pleader, lacking in any specificity as to how or why it has concluded that the vital confusion has or will result.

Plaintiff relies on the statement in *Dino, Inc.* v. *Boreta Enterprises, Inc.* (1964) 226 Cal.App.2d 336, 338-339 [38 Cal. Rptr. 167], that ''To state a cause of action for unfair competition here, appellant need only allege that its name has acquired a secondary meaning; that respondent's name, later adopted and used, has deceived or is likely to deceive or confuse the public, and that appellant has been or is likely to be damaged by respondent's conduct.''

But, after this generalized statement of the elements of a cause of action, the court in *Dino* continues (at p. 340): ''Here appellant has merely stated that its name has acquired a secondary meaning which is obviously a conclusion of law. Nevertheless, other allegations of the complaint make clear the length of time appellant has used its name, the manner and method of its use, *and allege that both appellant and respondent operate the same general type of business establishment, in close proximity with each other.* Under *these* allegations we think the pleading adequately gives notice to respondent that the public has come to associate appellant's name with the kind of business enterprise conducted by both parties, . . . and that the respondent's use of a similar name confuses and misleads the public to appellant's damage.'' [Italics added.] It is, thus, clear that *Dino* not only does not support, but actually is adverse to, plaintiff's case here. Here, not only are the two businesses not of the same ''general type,'' operated in close proximity, but there are no other allegations, serving a

similar purpose, to support and give color to the bare conclusionary allegations of secondary meaning and confusion.

*D*

Plaintiff argues that its allegations, quoted above and numbered "(5)", as to communications made to it, supply the needed specificity. But a case of unfair competition rests on a confusion, or a likelihood of confusion, on the part of the public as a whole, acting as reasonable persons; it cannot rest on the fact that isolated individuals, whose capacity for discrimination is unknown, may have been momentarily confused. (*Cridlebaugh* v. *Rudolph* (1942) 131 F.2d 795, 801;[1] *Harad* v. *Sears, Roebuck & Co.* (1953) 204 F.2d 14, 19.)[2] The allegations relied on go no further than to cite such casual confusion and fall short of the required showing that the general, and normally discriminating public, were, or might be confused as to identity. We are told only that "certain members of the public" have become confused and have communicated with plaintiff concerning defendant's operations. We are not told how many persons were so confused, or anything to indicate that they were, in any way, representative of the public as a whole. More is needed.

*III*

 However, plaintiff has been given no opportunity to supply the necessary additional allegations. We cannot say, on this record, that that is impossible. It should be allowed to try.

The judgment is reversed; the case is remanded for further proceedings not inconsistent with this opinion.

Jefferson, J., concurred.

FILES, P. J.—I concur in the reversal but dissent from the holding that plaintiff cannot state a cause of action "unless it is able to plead and to prove some special circumstances, peculiar to the two businesses involved, from which confusion would be likely to result."

The present complaint is defective in alleging that "certain" persons, rather than the public generally, have been confused, but this can readily be cured by amendment. Plain-

---

[1] "The test is whether the public is likely to be deceived by the alleged infringing name." (*Cridlebaugh* v. *Rudolph* (1942) 131 F.2d 795, 801.)

[2] "Isolated cases of confusion do not justify a finding that actual confusion is established. . . ." (*Harad* v. *Sears, Roebuck & Co.* (1953) 204 F.2d 14, 19.)

tiff has already alleged that its retail business has long been well known by the name Sunset House, and that defendant has commenced to operate a restaurant in the same community using the same name. The public knows that many retailers operate restaurants, even though this plaintiff does not. I cannot say, as a matter of law, that the two businesses are so dissimilar that substantial confusion could not arise from the circumstances stated in the complaint. The issue is for the trier of the facts. (Cf. *Winfield* v. *Charles*, 77 Cal.App.2d 64, 70 [175 P.2d 69]; *Safeway Stores* v. *Rudner*, 246 F.2d 826; *Safeway Stores* v. *Dunnell*, 172 F.2d 649; see *Yale Electric Corp.* v. *Robertson*, 26 F.2d 972, 973-974.)